GREEN et, Plaintiff-Appellees, v. GREEN, Admrx., et, Defendant-Appellants.

Ohio Appeals, First District, Hamilton County.

No. 7052.   Decided May 31, 1949.

Clark & Robinson, John F. Hellebush, Cincinnati, for plaintiff-appellees.

Walter K. Sibbald, Cincinnati, for defendant-appellants.

## OPINION

By HILDEBRANT, J.:

This is an appeal on questions of law from the judgment of the Common Pleas Court, setting aside the will of George C. Green, deceased, in conformity to a jury verdict.

The Court has carefully read the voluminous record of nearly five hundred pages, and has concluded that the verdict here is manifestly against the weight of the evidence. In fact, the close question appearing to the Court is whether or not a verdict sustaining the will should not have been directed.

The attack on the will was made on the basis of lack of testamentary capacity and undue influence.

As to the lack of capacity, the record is most meagre. Plaintiffs introduced the coroner's report of an autopsy, finding death due to coronary arteriosclerosis and disclosing a slight narrowing of the middle cerebral arteries due to the arteriosclerotic condition.

Plaintiffs called Dr. Striker, who never saw testator during his lifetime, as an expert witness. He answered a hypothetical question, the last paragraph of which is:

"Now assuming all this, would you say that in your opinion, based on your experience, that this man on October 29, 1947, two days before his death, the day on which he signed a paper writing purporting to be his last will and testament, had sufficient mind and memory to comprehend generally and would you say that the mind of this person on that day was so altered that he could be restrained from disposing of this property in accordance with his own independent judgment and wisdom?"

\*       \*       \*       \*       \*

"Q. Would you say that the mind of this person on that day, that is, October 29, 1947, was so altered that he could be restrained from disposing of his property in accordance with his own independent wishes and judgment?

"A. I would say, yes. May I qualify?

"Q. Yes.

"A. Yes—in view of the history, the medical history and the facts of the postmortem, chronic hypertrophic gastritis, showing that he has had a long standing chronic alcoholism as manifested by the gastritis. Secondly, by the very marked fibrosis of myocardium, replacement of normal tissues; third, by the evidence of coronary artery insufficiency as manifested by thickening arteries of the coronary and lastly by changes in the middle cerebral artery of his brain.

\*       \*       \*       \*       \*

"Q. Now doctor, assuming this same man that I have just described to you, would you say that in your opinion, on October 29, 1947, two days before his death which was the last day—which was the day he signed this paper writing purporting to be his last will and testament, would you say from the history and your own experience that this man had sufficient mind and memory to hold in his mind the names and identity of those who had natural claims upon his bounty?

\*       \*       \*       \*       \*

"A. I would say this man could not exercise normal judgment in view of these particular circumstances.

\*       \*       \*       \*       \*

"Q. I put the same question to you and ask you whether or not in your opinion, this same man on that same day had the sufficient mind and memory to be able to appreciate his relation to the members of his family?

\*       \*       \*       \*       \*

"A. I would say this man, that the same explanation applies to that question. He would not have the capacity to exercise normal cerebral mental function."

No other evidence as to the mental condition at time of making the will in question is in the record, except testimony that some two hours after making his will his wife called Dr. Hess to attend to him while in bed in a drunken condition.

The answers of the expert are not too responsive to the questions put and certainly fall far short of being direct testimony impeaching testator's capacity to make a will. The answer directed to undue influence is subject to the same defect. At the time the will was executed by testator himself, the record shows that the two witnesses, who were ladies rooming in the house, were called from their second floor rooms by testator himself, and while the second wife was in the room, there is no evidence of any influence being exerted on her part at the time. Both witnesses testify testator was not then drunk, and the witness Miller stated:

"Q. Did he make any statements to you at the time the will was being written?

"A. Yes, he wanted Consetta to have everything that she was very, very good to him. I saw that myself."

The witness Gallenstein, now a Railway Mail Clerk, a fellow worker with decedent up to the time of his death, seeing him every day, testified testator was the best salesman the Company ever had, and he had declared to him on three or four occasions that his first wife and boys had taken his fruit business away from him, robbed his bank box, and if he made a will he didn't want them to receive any part of his estate.

One of the plaintiffs saw his father about ten days before his death and testified he was sober, well dressed, apparently in good health, and was making a business call on the same customer as the son at the time.

There is much conflicting testimony in the record, from which different inferences might be drawn, as to whether or not the second wife generally had an influence over testator, frustrating a desire to return to his former family. Also, the records reveals many inconsistencies in action on his part from his quoted statements concerning his feelings for both his original family and the second wife, and made while both drunk and sober. It, therefore, seems a jury question is presented.

From a careful consideration of the whole record, however, we conclude that the evidene is insufficient to justify a finding

of lack of testamentary capacity or undue influence and that the verdict is, therefore, manifestly against the weight of the evidence, and the judgment is reversed.

ROSS, PJ, HILDEBRANT & MATTHEWS, JJ, concur.